CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
SEP 30 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| VINCENT E. EDWARDS, | ) | CASE NO. 4:13CV00001 |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | By:  B. Waugh Crigler<br>U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's April 22, 2010 protectively-filed application for supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C. § 1381, et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the plaintiff's motion for summary judgment, in part, DENYING the Commissioner's motion for summary judgment, and REMANDING this case to the Commissioner for further proceedings.

In a decision dated June 14, 2011, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since April 22, 2010, his application date.[2]

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. (Dkt. No. 16.) Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin hereby is substituted for Michael J. Astrue as the defendant in this action.

[2] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period

(R. 27.) The Law Judge determined plaintiff's cervical degenerative disc disease status post cervical fusion was a severe impairment.[3] (R. 27.) He determined that plaintiff's history of substance dependence was not a severe impairment and that he had no determinable mental impairment. (R. 27.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 27-28.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform a range of light work, though he was limited to occasional overhead reaching and could not climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to hazards. (R. 28-30.)

In support of his decision, the Law Judge relied on portions of the testimony of Andrew V. Beale, Ed.D., a vocational expert ("VE"), which were in response to questions premised on the Law Judge's RFC finding. (R. 30-31, 57-63.) Based on this testimony and his determination of plaintiff's RFC, the Law Judge found that plaintiff was unable to perform any of his past relevant work. (R. 30.) Furthermore, he found that there were other jobs in significant numbers in the local and national economy which plaintiff could perform, including as a lobby attendant, garage cashier/attendant, and ticket taker. (R. 31.) Accordingly, the Law Judge concluded that plaintiff was not disabled. (R. 32.)

Plaintiff appealed the Law Judge's June 14, 2011 decision to the Appeals Council and submitted additional evidence on administrative appeal. (R. 1-5, 214-215, 342-378.) In its December 12, 2012 decision, the Council considered the additional evidence plaintiff had filed while on appeal, but it found no basis to review the Law Judge's decision, denied review, and adopted the

---

of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A) (2004). Substantial gainful activity is "work activity that involves doing significant physical or mental activities," and it is typically determined by the amount of a claimant's earnings. See 20 C.F.R. §§ 404.1572 and 1574. The sequential evaluation is a five step process used by the Commissioner to evaluate whether a claimant is disabled. See 20 C.F.R. § 404.1520(a)(4). If a claimant is found not disabled at any level prior to the final level, the inquiry is to stop. Id.

[3] A severe impairment is any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c).

Law Judge's decision as the final decision of the Commissioner. (R. 1-3.) This action ensued, and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Commissioner's final decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

Plaintiff challenges the Law Judge's decision on the grounds that the Appeals Council's adoption of the Law Judge's RFC determination and his assessment of the evidence submitted by one of plaintiff's treatment providers, Vanessa P. Hairston, FNP, are not supported by substantial evidence in light of the additional evidence filed before the Appeals Council. (Dkt. No. 15, at 2-4.)

There is no doubt that plaintiff suffered a serious injury on March 27, 2010,[4] described as C5-C6 jump facet and C4 laminar and facet fracture and requiring an open reduction of C5-C6 facet and

---

[4] The exact cause of plaintiff's injury is uncertain. Plaintiff has told at least three different stories of what occurred. Plaintiff initially reported that he had been in an "altercation," possibly

3

C4-C6 lateral mass fixation and fusion. (R. 261-262.) The only question on judicial review is whether the Commissioner's final decision is supported by substantial evidence in light of the additional evidence submitted by plaintiff while the case was on administrative appeal. The answer to that question depends in large part on the weight to be given Hairston's functional assessment.

In a December 2010 functional assessment, Hairston indicated that plaintiff suffered signs and symptoms of impaired sleep, substance dependence, depression, anxiety, sensory loss, muscle weakness, and reduced range of motion. (R. 318.) Her diagnosis included cervical neck injury and repair, chronic pain syndrome, and memory impairment. *Id.* She rated his prognosis as fair and opined that his condition would be expected to last at least twelve months. (R. 318.) She further opined that plaintiff could only stand/walk or sit for zero to two hours of an eight-hour workday, could only occasionally lift or carry less than ten pounds, rarely up to twenty, and never fifty; could only rarely perform activities involving fingering, grasping, handling, stopping/bending, or crouching; would frequently suffer pain which would interfere with attention and concentration needed to perform simple work tasks; and would miss more than four days per month of work as a result of his impairments and treatment. *Id.*

In a March 10, 2011 Medical Source Statement concerning plaintiff's cervical spine impairments, Hairston noted that plaintiff experienced or suffered the following: pain/numbness in both hands resulting from cervical spine disease, emotional lability tied to depression and anxiety, memory loss, muscle spasm and weakness, weight change, impaired sleep, lack of coordination, abnormal posture, dropping things, and severe headaches three times a week, which were rated 9/10 in pain and reported to cause nausea/vomiting, malaise, and photosensitivity. (R. 337-338.) She diagnosed plaintiff with hepatitis C, cervical spine disease, and depression, and she once more opined

---

with his brother, and was either punched or thrown into a 4x4 post. (R. 227, 250, 259.) Soon after, plaintiff indicated that "he was playing around with friends, and was pushed into a wooden porch post." (R. 270.) Later on still, he claimed that he was "stumped (sic) on" while attempted to break up a fight. (R. 359.) All this plays a role in determining credibility.

that his prognosis was fair. *Id.* She also found that plaintiff had significant limitations in range of motion of his cervical spine. *Id.* She believed that plaintiff: frequently would be unable to concentrate on simple work tasks because of his pain, would be unable to perform even low stress jobs because of his emotional lability, could only walk less than one block without rest or severe pain, could sit or stand/walk for fifteen minutes without rest and for less than two hours each of an eight-hour workday, and then only where there were opportunities to stand and walk around; had good and bad days; and would miss more than four days of work per month. (R. 339-340.)

The Law Judge found that Hairston's opinions were "far too extreme in their ascribed limitations" and were not well supported by the record. (R. 30.) He noted that the evidence of objective abnormalities was limited, and that Hairston did not specify the extent of any limitations plaintiff was found to experience. *Id.* He further noted that there was little evidence of any failure to improve after surgery, there was no evidence of emergent treatment, and that "no examining or treating source has suggested that the claimant is disabled or unable to perform the limited range of light work" described in his RFC.[5] *Id.* He also concluded that the evidence offered by plaintiff and his mother was not entirely credible, and as a result, did not fully credit their evidence. (R. 29.)

The undersigned agrees that, because Hairston was not an acceptable medical source, her opinion would not be entitled to controlling weight and could not be used to prove the existence of any medically determinable condition.[6] *See* 20 C.F.R. § 404.1513; SSR 06-03p, 2006 WL 2329939 (August 9, 2006). However, evidence from "other sources" may reveal the severity of a previously diagnosed impairment, so long as it is consistent with the other medical evidence of record as a

---

[5] Given that Hairston is a treating source whose functional assessments would suggest that plaintiff is disabled, the undersigned believes that the Law Judge likely meant acceptable medical sources.

[6] Moreover, Martha Cadarette, a credentialed social worker and addictions specialist (R. 326-335), is also not an acceptable medical sources under the regulations. *See* 20 C.F.R. § 404.1513; SSR 06-03p, 2006 WL 2329939 (August 9, 2006). The Commissioner was not obliged to accept any diagnoses from either Cadarette or Hairston or accept any findings concerning mental or emotional impairments that otherwise were not verified by an acceptable medical source. *Id.*

whole. *Id.* Here, there are several inconsistencies in parts of Ms. Hairston's assessments. Her own treatment notes suggest that plaintiff's pain was, at least in part, relieved by medication. Though plaintiff reported 10/10 pain at the time of his injury in March 2010 (R. 227, 247, 250) and 7/10 pain at his first follow up in May 2010 (R. 289), from November 2010 to March 2011, plaintiff's pain was noted as being between 3/10 and 5/10, substantially different from the 9/10 pain Hairston reported in her opinion. (Compare R. 320-324, 341 with R. 337.) She also noted that plaintiff's pain medications were "effective" and "relieve pain enough to help him [function]." (R. 322, 324, 341.) Physical examination findings, even at the time of his injury, essentially were normal (R. 226-227, 259-260), and at plaintiff's May 2010 follow-up appointment, he was found to be slowly improving, with normal affect, motor function in his extremities, gait, reflexes, etc. (R. 289-291.) Though Hairston noted plaintiff suffered a limited range of motion and tenderness in his neck, along with numbness, stiffness, and tingling, she did not describe the degree or severity either of those impairments or their limitations. (R. 320-324, 341.)

Hairston's opinion, to some extent, also is inconsistent with plaintiff's own testimony. She believed plaintiff could not sit for more than two hours in an eight-hour workday and could not sit for more than fifteen minutes at a time. However, plaintiff reported attending a four-hour and a five-hour class each week while trying to earn a degree in business administration, each with hourly breaks. (R. 50-51.) Plaintiff also testified that he could walk continuously for 20-30 minutes, lift 30-40 pounds occasionally, and lift 2-liter bottles and grocery bags frequently, all of which are very different from the limitations described in Hairston's assessments. (Compare, R. 45-46 with R. 337-340.)

Nevertheless, the undersigned does have concerns about the Law Judge's credibility determination. Plaintiff's primary complaint has been severe, disabling pain radiating from his neck following surgery on his cervical spine. (R. 43-47.) The objective medical evidence demonstrates that plaintiff suffers an impairment of his cervical spine which reasonably could cause his pain, and

6

for which he has received regular treatment, including pain medications. (R. 259-260, 289-291, 320-324, 341.) While the Law Judge found that plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, he also found that the evidence offered by plaintiff and his mother concerning the intensity, persistence, and limiting effects of his impairment was not credible to the extent their testimony was inconsistent with his assessment of plaintiff's RFC. (R. 29, 161-171.)

The Law Judge must clearly state the reasons for his decision and identify what evidence he relied upon in order to allow a reviewing court to determine whether those findings are supported by substantial evidence. *See Hatcher v. Sec'y Dep't of Health & Human Servs.*, 898 F.2d 21, 23-24 (4th Cir. 1989) (quoting *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir.1985)). Moreover, brief conclusory statements or mere recitation of the regulatory factors are insufficient. *See* SSR 96-7p, 1996 WL 374186, at *2, 4-5 (July 2, 1996). The determination must include specific reasons for the credibility finding, supported by the record and sufficiently specific to make clear to the claimant and to those who subsequently review the Law Judge's decision the weight given to the claimant's statements and the reasons for assigning that weight. *Id.*

The Law Judge considered plaintiff's testimony, the function reports from both plaintiff and his mother, treatment reports from March, May, and November 2010, as well as the opinions of the State agency medical consultants and Hairston. (R. 28-30.) However, specific findings of fact pointing to particular evidence supporting his credibility determination are somewhat lacking. (R. 29-30.) The Law Judge's finding that plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms were "credible only to the extent that they are consistent with the above residual functional capacity assessment," is merely boilerplate that could be viewed as an inadequate, self-proving statement unless it was supported by additional specific findings. *See Bjornson v. Astrue*, 671 F.3d 640, 644-646 (7th Cir. 2012).

7

Here, the Law Judge simply paraphrased some of the medical evidence, and notably not all of it, and he did not make any clear findings of his own. The undersigned cannot determine from these summaries of the evidence what specific inconsistencies or other findings the Law Judge relied upon to find that plaintiff's testimony was not credible. He justified his rejection of Hairston's opinion on the basis that the record reflected "very limited findings of objective abnormalities," that there was no evidence of emergent treatment or of plaintiff's failure to improve after surgery. (R. 30.) Yet, these reasons remain very general in nature and do little to articulate why plaintiff and his mother were not credible.

At bottom, the undersigned cannot help but believe the Law Judge essentially justified his decision on the basis that plaintiff's allegations were not supported by objective evidence in the record. It is true that a plaintiff must prove by objective evidence that she suffers a condition that could cause their pain, though objective evidence is not required to prove intensity, persistence, and limiting effects of these symptoms. *See Craig v. Chater*, 76 F.3d 585, 591-593 (4th Cir. 1996). In other words, objective evidence is a very important element for making any credibility determination, but a plaintiff's allegations concerning her pain may not be discredited solely because they are not supported by objective medical evidence. *Id.*; SSR 96-7p, 1996 WL 374186 (July 2, 1996). Here, the Law Judge does not point to any objective evidence as directly contradicting plaintiff's allegations and merely made a general finding that the objective evidence does not support those complaints. Without more, that could be considered inadequate.

While there is evidence in the record, both medical and lay, which could undermine plaintiff's credibility, it is the Law Judge who must make the credibility determination and support it with specific reasons and references to the evidence, particularly when evaluating the presence and disabling effects of pain. *See* SSR 96-7p, 1996 WL 374186, at *2, 4-5 (July 2, 1996); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985); *Stotler v. Astrue*, No. 3:09cv00013, 2010 WL 376620, at *3, 6 (W.D.Va. Jan. 27, 2010). The court may not reweigh the evidence or make its own credibility

8

findings, including by considering evidence or reasons outside of those stated by the Law Judge. *See Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Stotler v. Astrue*, No. 3:09cv00013, 2010 WL 376620, at *3, 6 (W.D.Va. Jan. 27, 2010); *Jolly v. Barnhart*, 465 F.Supp.2d 498, 505-506 (D.S.C. 2006). While errors in credibility determinations may be harmless where other evidence provides substantial evidentiary support,[7] the lack of meaningful explanation or specific findings and reasoning gives the undersigned little, if anything, to assess in determining whether the Law Judge's findings are supported by substantial evidence. *See Robbins v. Social Sec. Admin.*, 466 F.3d 880, 884-885 (9th Cir. 2006); *Spencer v. Barnhart*, No. 7:06cv00420, 2007 WL 1202865, at *1-2 (W.D.Va. April 20, 2007). Accordingly, this case should be remanded to allow for a proper credibility assessment.

Plaintiff also contends that the additional evidence submitted on administrative appeal provides support for plaintiff's allegations and Hairston's assessments, which he alleges the Appeals Council failed to properly address. (Dkt. No. 15, at 2-4.) The Appeals Council must consider additional evidence that is new and material and relates to the period on or before the Law Judge's decision. *See* 20 C.F.R. § 416.1476(b)(1). Evidence is new if it is not duplicative or cumulative, and it is material if it reasonably could have changed the Law Judge's decision had it been in the record at the time. *See Meyers v. Astrue*, 662 F.3d 700, 704-705 (4th Cir. 2011) (quoting *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991)). If the additional evidence passes this three-part test, the Appeals Council must consider it along with the rest of the record and give it the proper weight in determining whether the Law Judge's decision is supported by the evidence. *Id.*

Here, the Appeals Council indicated that it considered the additional evidence, but it dismissed this evidence on the ground that there was no basis to change the Law Judge's decision. (R. 1-4.) Moreover, it incorporated the evidence into the record rather than sending it back to the

---

[7] *See Copeland v. Bowen*, No. 88-2972, 1989 WL 90545, at *3 (4th Cir. Aug. 7, 1989) (unpublished).

claimant, suggesting that the Appeals Council found that the evidence related to the relevant period. (R. 1-4.); 20 C.F.R. § 416.1476(b)(1). The Commissioner argues, however, that the evidence is not material and does not relate to the relevant period. (Dkt. No. 17, at 9-13.)

This is a difficult question, in part because the undersigned cannot determine with certainty how the Council considered the evidence. All of the additional evidence actually was generated during a period following the Law Judge's decision, specifically from October 2011 through February 2012. (R. 344-378.) However, the treatment notes specifically refer back to the relevant period, indicating that plaintiff's cervical spine symptoms date back to the year and a half preceding his March 2010 injury. (R. 345, 359.). While the additional evidence does not specifically state that there were problems with plaintiff's March 2010 surgery, there is a strong inference that additional radiographs and the need for additional surgery on the same area suggest that the first surgery was not successful, and that the impairments plaintiff suffered that they endured following surgery. (R. 351-355, 359-362, 366-371, 374-378.) Plaintiff was referred to an orthopedic surgeon on the basis of "C5/C6 anterolisthesis," which was present on his x-rays following his original surgery. (R. 287-290.) This evidence also provides support for plaintiff's allegations and for Hairston's opinion, revealing continued complaints of severe pain, limited range of motion, tenderness and numbness in his upper extremities, and frequent headaches. (R. 345-347, 354-355, 359-362.)

Moreover, the evidence rebuts some of the Law Judge's findings. In his decision, the Law Judge concluded, "there is little evidence to suggest that his impairments did not improve [after surgery]...[plaintiff] has proffered no evidence of emergent treatment since then." (R. 30.) He also cited the evidence of State agency medical consultants who opined that plaintiff's impairments would not last twelve months. (R. 30, 179, 190.) The additional evidence could demonstrate that plaintiff's condition remained severe, to the point of requiring subsequent surgical intervention to alleviate his symptoms.

The undersigned's concerns are compounded by the uncertainty of the evidence as a whole. The Appeals council denied review, and no fact finder has examined this additional evidence to determine the degree to which it relates back, the extent to which it confirms or dispels the claim that the first surgery failed, and the weight this evidence should be accorded. Accordingly, the undersigned cannot conclude that substantial evidence supports the Law Judge's findings. *See Meyers v. Astrue*, 662 F.3d 700, 706-707 (4th Cir. 2011). For this reason, along with the fact that the Law Judge's credibility determination was inadequate, the undersigned finds that this case should be remanded to the Commissioner for further review.

It is RECOMMENDED that an Order enter GRANTING the plaintiff's motion for summary judgment, in part, DENYING the Commissioner's motion for summary judgment, and REMANDING this case to the Commissioner for further proceedings.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ _____
U.S. Magistrate Judge

Date: Sept 30, 2013